UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| KAVEH KAMYAB,<br><br>        Petitioner,<br><br>        v.<br><br>PAMELA BONDI, Attorney General of the United States; *et al.*,<br><br>        Respondents. | Case No. C25-389RSL<br><br>ORDER APPROVING REPORT AND RECOMMENDATION |

This matter comes before the Court on the Report and Recommendation from Magistrate Judge Michelle L. Peterson (Dkt. # 18), the Government's objections (Dkt. # 19), and petitioner's response to the Government's objections (Dkt. # 20). Having reviewed these filings and the record herein, and having also conducted a de novo review of the Report and Recommendation due to the objections thereto (*see* 28 U.S.C. § 636(b)(1)), the Court APPROVES AND ADOPTS the Report and Recommendation and issues related findings and orders as discussed below.

**I.    Background**

Petitioner was born in Tehran, Iran in 1962. Dkts. # 9 at 2; 10, Ex. A at 2. He is currently detained by U.S. Immigration and Customs Enforcement ("ICE") at the Northwest ICE

ORDER APPROVING REPORT
AND RECOMMENDATION - 1

Processing Center ("NWIPC") in Tacoma, Washington. Dkt. # 18. On March 4, 2025, petitioner filed for a writ of habeas corpus under 28 U.S.C. § 2241. Dkt. # 1.

Petitioner was admitted to the United States on a non-immigrant F-1 student visa in 1982 and then adjusted to conditional lawful permanent resident ("LPR") status in 1995. Dkts. # 9 at 2; 10, Ex. A at 4. On May 11, 2004, petitioner was convicted by a California Superior Court jury in Los Angeles of three counts of kidnapping for ransom, one count of conspiring to commit a crime, and one count of first-degree robbery. Dkts. # 9 at 2; 10, Ex. B. On November 30, 2005, he was sentenced to life with the possibility of parole on the kidnapping counts and six years on the robbery counts. Dkts. # 9 at 2; 10, Ex. B. On the conspiracy count, a sentence of life was imposed but stayed pursuant to California law. Dkt. # 10, Ex. B. Petitioner was around the age of 42 at the time of his conviction. Dkt. # 10, Ex. A at 2.

Petitioner was released 20 years later, on July 16, 2024. Dkt. # 9 at 2. Upon release, he was immediately arrested by ICE and transferred to NWIPC, where he remains. Dkts. # 9 at 2; 10, Ex. C. He is presently around the age of 63. Dkt. # 10, Ex. A at 2. Petitioner was charged with removability and on Aug. 28, 2024 an immigration judge ordered him removed to Iran. Dkts. # 9 at 2–3; 10, Ex. F. Because petitioner waived his right to appeal, the removal order became administratively final on Aug. 28, 2024. Dkt. # 10, Ex. F.

When a noncitizen is ordered removed and that order becomes administratively final, "the Attorney General shall remove the alien from the United States within a period of 90 days." 8 U.S.C. § 1231(a)(1). However, when, as here, the noncitizen is removable due to committing

ORDER APPROVING REPORT
AND RECOMMENDATION - 2

an aggravated felony, then that person may be detained beyond the removal period if the person is determined to be "a risk to the community or unlikely to comply with the removal order." *See* 8 U.S.C. § 1227(a)(2), 1231(a)(6). *See also* Dkt. # 18 at 5:13–17.

On December 6, 2024, ICE notified petitioner that his custody status had been reviewed and it had been determined petitioner would not be released because ICE believes he poses a danger to the community and is a flight risk. Dkt. # 10, Ex. H (citing 8 C.F.R. § 241.4(e), (f), and (g)). On March 4, 2025, petitioner filed the petition for writ of habeas corpus that is at issue in this matter. Dkt. # 1. On March 18, 2025, ICE notified petitioner that his custody status had been reviewed again it had been determined he would not be released. Dkt. # 10, Ex. I (citing 8 C.F.R. § 241.4(e), (f), and (g)).

**II.     Discussion**

Where, as here, a party objects to a Report and Recommendation from a Magistrate Judge, the Court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). Here, the Government objects to Magistrate Judge Michelle L. Peterson's finding that petitioner is entitled to habeas relief. Dkt. # 19 at 2:1–2. Because Judge Peterson's finding that petitioner is entitled to habeas relief rests on the entirety of Judge Peterson's Report and Recommendation, this Court will conduct a de novo review of the entirety of the Report and Recommendation. *See* Dkt. # 18; 28 U.S.C. § 636(b)(1).

ORDER APPROVING REPORT
AND RECOMMENDATION - 3

Case 2:25-cv-00389-RSL    Document 21    Filed 10/14/25    Page 4 of 11

As both petitioner and the Government agree, the fundamental question in this matter is whether petitioner's detention has become "indefinite." Dkts. # 1, 8, 11, 19. They also agree that the answer to this fundamental question is controlled by *Zadvydas v. Davis*, 533 U.S. 678 (2001). *Id.*

> In *Zadvydas*, the Supreme Court held that the [Immigration and Nationality Act] does not authorize "indefinite, perhaps permanent, detention" of noncitizens subject to final orders of removal. 533 U.S. 678, 699, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001). Applying the doctrine of constitutional avoidance, the Court explained that such an interpretation was necessary "to avoid a serious constitutional threat[.]" *Id.* As the Court recognized, "[a] statute permitting indefinite detention of [a noncitizen] would raise a serious constitutional problem [under] ... [t]he Fifth Amendment's Due Process Clause[.]" *Id.* at 690, 121 S.Ct. 2491. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Id.*

*Nguyen v. Scott*, No. 2:25-CV-01398, 2025 WL 2419288, at *12 (W.D. Wash. Aug. 21, 2025).

The *Zadvydas* decision traces, in part, to this Court's 1999 decision to order a noncitizen released from custody on due process grounds. *See Kim Ho Ma v. I.N.S.*, 56 F. Supp. 2d 1165 (W.D. Wash. 1999) (involving a Cambodian refugee who was convicted of first degree manslaughter, served two years incarceration, and then was detained by the Immigration and Naturalization Service for over two years while awaiting removal); *Ma v. Reno*, 208 F.3d 815, 819 (9th Cir. 2000); *Zadvydas*, 533 U.S. 678, 685 (2001). *See also* C99-151RSL, Dkt. # 79. In *Zadvydas*, the Supreme Court held that "for the sake of uniform administration in the federal courts," following a final removal order it is "presumptively reasonable" for the Government to detain a noncitizen for six months while the Government works to remove that person from the United States. *Zadvydas*, 533 U.S. 678 at 682, 701. "After this 6–month period, once the alien

ORDER APPROVING REPORT
AND RECOMMENDATION - 4

provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id*. at 701. This does not mean a noncitizen may not be held past the six-month period of presumptive reasonability. *Id*. "To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." But, "as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Id*.

### A. Petitioner Has Met His Burden Under *Zadvydas*.

Once the six-month period of "presumptively reasonable" detention has expired a petitioner seeking release from pre-removal detention must show there is "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. 678 at 701. Here, petitioner's removal order became administratively final on Aug. 28, 2024. Dkts. # 9 at 3; 10, Ex. F. Therefore, as the Government admits, the six-month period of "presumptively reasonable" detention set by *Zadvydas* has expired. Dkt. # 8 at 4:3–4. As of the date of this order, the "presumptively reasonable" period of detention expired more than seven months ago.

In his March 4, 2025 petition for habeas relief, petitioner argues that "there is not good reason to believe my removal will be effectuated in the foreseeable future" and states that Iran has "rejected" his application for travel documents on the grounds that he is not a citizen of the country. Dkt. # 1 at 3:25–26. Petitioner's sister claims that after contacting the Interest Section

ORDER APPROVING REPORT
AND RECOMMENDATION - 5

of the Islamic Republic of Iran at the Pakistani Embassy in Washington, D.C., in March 2025, she was told that "no one from the U.S. Homeland Security Department, the Justice Department, ICE, or any other agency has ever contacted them to obtain or inquire about any travel documents for my brother." Dkt. # 11 -2. There is conflicting evidence in the record as to these claims. The Government states that petitioner helped prepare a "travel document packet" that was received by Iranian authorities on Oct. 28, 2024. Dkt. # 9 at 3. The Government also claims that petitioner "incorrectly asserts that Iran has rejected his application for travel." Dkt. # 8 at 2. Even if the court were to credit petitioner's March 2025 claim that Iran had "rejected" his application *and* credit his sister's statement that in March 2025 Iranian authorities told her they had never been contacted about travel documents for petitioner, the Government has since "resubmitted" a "travel document packet" to Iranian authorities, with that resubmission occurring on April 4, 2025. Dkt. # 9 at 4. The Government states that this resubmitted packet "remains pending." *Id*. Although the resubmission occurred more than six months ago, the record does not provide the Court with any reason to conclude that the resubmitted packet is no longer "pending." At the same time, the record does suggest that petitioner's packet could remain pending for quite some time. *See* Dkt. # 17–1 at 2–3 (the Government stating on July 11, 2025 that Iran has not interviewed petitioner, is "currently pending reassessment on its cooperation status," and "has issued travel documents in the past twelve months and verified passports for travel, but not in a timely manner and fails to respond to status requests for most

ORDER APPROVING REPORT
AND RECOMMENDATION - 6

cases."). *See also* Dkt. # 19 at 2 (the Government stating on Aug. 19, 2025 that no interview has been scheduled with petitioner).

The Government does not contest petitioner's statement that he has "done everything that ICE has asked me to do to try to get travel documents." Dkt. # 1 at 3:23–25. *See also* 8 C.F.R. § 241.4(g)(1)(ii). Petitioner has further stated that he "will cooperate fully in the process of getting travel documents." *Id*. As Magistrate Judge Peterson has carefully documented in the Report and Recommendation, Iran requires "original documents" to move the process forward (Dkt. # 18 at 9:21–10:4). Examples of "original documents" that would be helpful in this matter are an original passport or an original birth certificate. Dkts. # 13 at 2:4–6; 17-1 at 2:4. However, the Government has been "unclear" as to whether it is in possession of any original documents that could satisfactorily prove to Iranian authorities that petitioner is an Iranian national. Dkt. # 18 at 10. At most, a declaration submitted by the Government suggests the Government is in possession of *copies* of an Iranian identity card and *copies* of pages from petitioner's Iranian passport. *Id*. As Magistrate Judge Peterson notes, the Government has not explained how copies of all or part of an original document "might satisfy Iran's requirement for 'original documents.'" Dkt. # 18 at 11.

In addition, having concluded on May 6, 2025 that petitioner's file does not contain any "original documents," the Government one day later, on May 7, 2025, made third-country removal requests to Costa Rica, Panama, and El Salvador in this matter. Dkt. # 17-1 at 3:5–10. "[N]o response has been received from Costa Rica or El Salvador." *Id*. Further, "[t]here is

ORDER APPROVING REPORT
AND RECOMMENDATION - 7

currently no estimate when a response may be received by these third countries." *Id*. The Government's decision to seek third-country removal raises questions as to the strength of the Government's belief that petitioner's removal to Iran "is significantly likely in the reasonably foreseeable future." Dkt. # 17-1 at 3:21–22.

Underlining those questions is 8 U.S.C. § 1231(b)(2)(E)(i–vii). As far as the Court can ascertain there is no indication in the record that petitioner entered the United States by way of residency in or departure from Costa Rica, Panama, or El Salvador. *See* Dkt. # 10-5 at 2 (stating only that petitioner was "admitted to the United States at New York, NY on December 21, 1982"). If petitioner did not enter the United States by way of residency in or departure from Costa Rica, Panama, or El Salvador, then under 8 U.S.C. § 1231(b)(2)(E)(i–vii) the Government would only be seeking petitioner's removal to Costa Rica, Panama, or El Salvador if it were "impracticable, inadvisable, or impossible" for petitioner to be removed to Iran.

Thus, there are three supports for petitioner's claim that there is "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. 678 at 701. The first is the lack of evidence that the Government has submitted the required "original documents" to Iranian authorities. The second is the Government's own decision to seek third-country removal without any evidence in the record that petitioner has a legally meaningful connection to the relevant third-countries under 8 U.S.C. § 1231(b)(2)(E)(i–iii). The third is the Government's statement that "[t]here is currently no estimate when a response may be received by these third countries." Dkt. # 17-1 at 3:5–10.

ORDER APPROVING REPORT
AND RECOMMENDATION - 8

Based on these supports for petitioner's claim, the Court finds that petitioner has met his burden to show "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. 678 at 701.

### B. Respondent Has Not Met Its Burden Under *Zadvydas*.

Once petitioner has met his burden to show "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," the burden shifts to respondent to "respond with evidence sufficient to rebut that showing." *Id*. The Government's most recent filing in this matter admits that Iranian authorities have not yet scheduled an interview with petitioner. Dkt. # 19 at 2. A declaration submitted by the Government on May 8, 2025 suggests that an interview would not be scheduled until appropriate documentation is received. Dkt. # 13 at 2:10–11. As discussed above, the Government has not made clear to the Court that it has submitted appropriate documentation. This all weighs against a finding that the Government has met its burden under *Zadvydas*.

In its most recent filing the Government argues that in general "Iran is accepting return of its citizens," that Iran generally has "indicated that it was reviewing its backlog of cases and would be reaching out with interview requests," and that "[u]nder these circumstances" petitioner should not be released. Dkt. # 19 at 2. But these generalized statements are far too vague and conclusory to rebut petitioner's showing in this particular matter. *See Nguyen*, No. 2:25-CV-01398, 2025 WL 2419288, at *16–17 (W.D. Wash. Aug. 21, 2025) (rejecting similar

ORDER APPROVING REPORT
AND RECOMMENDATION - 9

statements from the Government as too "vague and conclusory" and ultimately finding the Government had not met its burden under *Zadvydas*).

At most, the Government's arguments and declarations here show there is "at least some possibility that [Iran] will accept Petitioner at some point." *Id*.

> [T]hat is not the same as a significant likelihood that he will be accepted in the reasonably foreseeable future. *Zadvydas*, 533 U.S. at 701, 121 S.Ct. 2491. Courts in this circuit have regularly refused to find Respondents' burden met where Respondents have offered little more than generalizations regarding the likelihood that removal will occur. *See, e.g.*, *Singh v. Gonzales*, 448 F. Supp. 2d 1214, 1220 (W.D. Wash. 2006); *Chun Yat Ma*, 2012 WL 1432229, at *4–5; *Hoac*, 2025 WL 1993771, at *3.
>
> For example, in *Singh v. Gonzales*, the court found that ICE had not met its burden where it "merely assert[ed] that it has followed up on its request for travel documents" but could not provide any "substantive indication regarding how or when it expect[ed] to obtain the necessary travel document from the Indian government." 448 F. Supp. 2d at 1220. And in *Chun Yat Ma v. Asher*, the court considered an affidavit from an ICE official that included a statement that an individual's travel documents would "likely" be issued soon. 2012 WL 1432229, at *4. Yet, the court noted, a deportation officer could not give any "indication of when the issuance may occur." *Id.*

*Nguyen*, No. 2:25-CV-01398, 2025 WL 2419288, at *16–17 (W.D. Wash. Aug. 21, 2025). Here, Magistrate Judge Peterson's Report and Recommendation found that the Government's assertions that petitioner's removal is significantly likely in the reasonably foreseeable future are "based on conflicting representations about what documentation is available to support Petitioner's return and sparse information regarding the likelihood that the available documents will be deemed satisfactory by Iranian officials responsible for the issuance of travel documents." Dkt. # 18 at 12:2–6. The Court agrees with Magistrate Judge Peterson's

ORDER APPROVING REPORT
AND RECOMMENDATION - 10

assessment. Therefore, the Government has failed to meet its burden to "respond with evidence sufficient to rebut" petitioner's showing. *Zadvydas*, 533 U.S. 678 at 701.

### III.    Conclusion

For all the foregoing reasons, the Court, having reviewed the briefing and the record in this matter, and having also conducted a de novo review of the Report and Recommendation of Magistrate Judge Michelle L. Peterson due to the Government's objections thereto (*see* 28 U.S.C. § 636(b)(1)), hereby finds and ORDERS:

(1) The Report and Recommendation is approved and adopted.

(2) Respondents' motion to dismiss (Dkt. # 8) is DENIED.

(3) Petitioner's petition for writ of habeas corpus (Dkt. # 1) is GRANTED.

Respondents shall immediately release petitioner from detention on reasonable conditions of supervision. *See* 8 U.S.C. § 241.4(j), 241.5, 241.13(h).

IT IS SO ORDERED.

DATED this 14th day of October, 2025.

Robert S. Lasnik
United States District Judge

ORDER APPROVING REPORT
AND RECOMMENDATION - 11